IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CONNIE L. OLSON

        Plaintiff,

   v.

OREGON UNIVERSITY SYSTEM,
by and through GEORGE P.
PERNSTEINER, Chancellor, et al.,

        Defendants.

No. CV 09-167-MO

OPINION & ORDER

**MOSMAN, J.,**

    Connie L. Olson brought suit against the Oregon University System, Portland State University ("PSU"), and several administrators and professors at PSU in their official and individual capacities, for violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and 42 U.S.C. § 1983. She has also brought state law claims for rescission and negligence.

    Currently before the court is the defendants' Motion to Dismiss (#6). I GRANT the Motion to Dismiss as to Claims One, Two, and Three with prejudice because the complaint was filed well outside of the two-year statute of limitations for claims under the ADA, Section 504, and § 1983, and the statute of limitations was not tolled due to Ms. Olson's mental illness. I

PAGE 1 - OPINION & ORDER

GRANT the Motion to Dismiss as to Claim Five with prejudice because the state of Oregon has not waived its sovereign immunity in federal court as to tort claims and the claim is barred by the two-year statute of limitations. I GRANT the Motion to Dismiss as to Claim Four in part with prejudice and in part without prejudice. The Oregon University System and PSU are dismissed with prejudice due to sovereign immunity Claim Four is dismissed without prejudice as to the individual defendants because there are no federal claims remaining and thus no basis for federal jurisdiction.

## BACKGROUND

Ms. Olson was a student at PSU in 2004 and 2005. (Compl. (#1) ¶ 1.) She suffers from bipolar disorder and post-traumatic stress disorder, which she manages with a combination of drugs that affect her self-awareness. (*Id.* ¶ 11.) Her disability was registered with the Disability Resource Center at PSU while she was a student there. (*Id.*) Both Professor Kenneth Ames and Professor Natalie Vasey were aware of Ms. Olson's disabilities. (*Id.*)

In December 2004, Ms. Olson experienced visual and auditory hallucinations and delusions, manifesting in feelings of love and affection toward Dr. Vasey. (*Id.* ¶ 12.) Ms. Olson did not request or make sexual advances toward Dr. Vasey, (*id.*), however, Dr. Vasey apparently found the behavior to be inappropriate and unwelcome contact constituting sexual discrimination (*id.* ¶ 15). Eventually, Ms. Olson became aware of her delusional interest in Dr. Vasey and ceased communications with her. (*Id.* ¶ 12.) Over the following months, Ms. Olson was hospitalized and treated for her illnesses. (*Id.* ¶ 13.) During this time, her medication was adjusted and her behavior was monitored. (*Id.*) At the end of this period, Ms. Olson was stable and cleared to return to her prior activities. (*Id.*)

PAGE 2 - OPINION & ORDER

Ms. Olson sought to meet with Dr. Ames, the Chair of the Anthropology Department, to explain her disability and her behavior toward Dr. Vasey, who works in the Anthropology Department. (*Id.* ¶ 14.) Dr. Ames would not accommodate Ms. Olson's request that another woman be present at the meeting. (*Id.*) Later, Ms. Olson approached Dr. Ames in his office but he would not speak with her. (*Id.*) Ms. Olson then sent a written letter of apology to Dr. Vasey, again attempting to explain her disabilities and her prior behavior. (*Id.* ¶ 15.)

At some later time, Ms. Olson received a call from the Affirmative Action & Equal Opportunity Department ("AAEO") requesting that she sign the No-fault Settlement Agreement and Release ("Agreement"). (*Id.*) The Agreement states that Ms. Olson discriminated against Dr. Vasey because of her sex, by having inappropriate and unwelcome contact with her, i.e. sexual discrimination. (*Id.*) Ms. Olson protested against signing the Agreement because "no consideration was given to her disabilities and the cause of her behavior." (*Id.*) Ms. Olson contends that the AAEO did not investigate Dr. Vasey's claims or consider Ms. Olson's status as a disabled person when it created the Agreement. (*Id.* ¶ 16.) She became so upset that she was unable to read the agreement. (*Id.* ¶ 15.) Elaine Cohn, an AAEO employee, provided her with a general explanation of the Agreement but failed to explain the consequences of signing it. (*Id.* ¶¶ 15-16.) Ms. Olson "understood from the persons present that if she failed to execute the Agreement, then the matter would be referred to the President's office[,] which she explicitly understood to mean expulsion from PSU." (*Id.* ¶ 44.)

As a result of the Agreement, Ms. Olson was barred from the Anthropology Department, which was her chosen field of study at PSU. (*Id.* ¶ 17.) In December, 2005, Ms. Olson graduated from PSU with a Bachelor of Science degree in Social Science. (*Id.* ¶ 19.) In January

2006, Ms. Olson hung herself, partially due to her humiliation and frustration over being wrongfully accused of sexually harassing Dr. Vasey. (*Id.* ¶ 22.) She spent over a month in the hospital and respite care as a result. (*Id.*)

"Promptly after executing the contract, [Ms. Olson] notified Defendants of her intention to disaffirm the Agreement and has consistently sought to do so since that time . . . ." (*Id.* ¶ 46.) She sought to administratively address the Agreement and her bar from the Anthropology Department from October 2005 through September 2008. (*Id.* ¶ 20.)

## STANDARD OF REVIEW

In reviewing a motion to dismiss, a court must "accept as true all well-pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." *Watson v. Weeks*, 436 F.3d 1152, 1157 (9th Cir. 2006) (citing *ASW v. Oregon*, 424 F.3d 970, 974 (9th Cir. 2005)). A claim should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) "only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted." *Id.* (citing *Pacheco v. United States*, 220 F.3d 1126, 1129 (9th Cir. 2000)).

## DISCUSSION

### I.    Statute of Limitations

The defendants contend that Ms. Olson's claim for negligence and her federal claims under § 1983, the ADA, and Section 504, must be dismissed because they were brought well beyond the two year statute of limitations.[1] The two-year statute of limitations for general tort

---

[1] Ms. Olson's claim for rescission arises in contract and therefore has a six-year statute of limitations. Or. Rev. Stat. § 12.080(1).

PAGE 4 - OPINION & ORDER

actions found in ORS 12.110(1) is applicable to common-law negligence claims in Oregon. *Waldner v. Stephens*, 200 P.3d 556, 565 (Or. 2008).

Section 1983 does not contain a statute of limitations. Therefore, federal courts must "adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), *superceded by statute on other grounds*, 28 U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004). The Supreme Court had determined that § "1983 claims are best characterized as personal injury actions." *Id.* at 280. As discussed above, the statute of limitations for general tort actions, including personal injury actions, is two years. Or. Rev. Stat. § 12.110(1). Therefore, the statute of limitations for § 1983 actions in Oregon is two years. *Plumeau v. Sch. Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). The parties agree that the same two-year statute of limitations is appropriate for the ADA and Section 504 claims.

A.  *Accrual of Ms. Olson's Claim*

"Only the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law." *Wilson*, 471 U.S. at 269. The question of when a claim accrues is governed by federal law. *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000) (citing *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994)). "Under federal law, a claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Id.* (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)).

Ms. Olson's claimed injury in this case is that she was denied the same education opportunities as other students at PSU because she was not able to obtain a degree in her chosen field of study. (Compl. (#1) ¶¶ 25, 30, 39, 49.) She argues that she was not reasonably aware of

PAGE 5 - OPINION & ORDER

Case 3:09-cv-00167-MO    Document 15    Filed 05/06/09    Page 6 of 13

the existence of any claims until February 20, 2007, when the Department of Education's Office of Civil Rights provided Ms. Olson with a final letter regarding their investigation into her allegations. (Pl.'s Resp. (#10) 4.) Alternatively, she argues that she was unaware of her potential claims until she hired her attorney in February 2009 due to her mental and emotional disabilities. (*Id.* at 3.)

However, Ms. Olson's arguments miss the mark. The essential question is not when the plaintiff became aware that he or she had a legal claim, it is when the "plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Johnson*, 207 F.3d at 653 (citing *Kimes*, 84 F.3d at 1128); *see also United States v. Kubrick*, 444 U.S. 111, 123 (1979) (holding that accrual of a claim does not "await awareness by the plaintiff that his injury was negligently inflicted" and thus a basis for a law suit, it is enough that he knows he has been injured). Ms. Olson's injury occurred, at the latest, when she graduated from PSU in December 2005 without the degree in Anthropology that she wanted.[2] She was certainly aware that she had not been allowed to obtain a degree in Anthropology as of the date of her graduation, thus her claim accrued in December 2005. Ms. Olson filed suit on February 10, 2009, more than three years after her injury, thus, the state negligence claim and the federal claims are untimely unless the statute of limitations was tolled due to Ms. Olson's mental illness.

//

//

---

[2] It could also be argued that her injury occurred when she signed the Agreement and was no longer able to take classes in the Anthropology Department. However, at the motion to dismiss stage I must construe all facts in the light most favorable to the plaintiff, therefore, I find that the injury occurred upon graduation.

PAGE 6 - OPINION & ORDER

**B.**  *Tolling of Statute of Limitations Under Oregon Law*

Ms. Olson argues that the statute of limitations must be tolled due to her mental illness under ORS 12.160, which tolls the statute of limitations so long as the potential plaintiff is "insane." Because Ms. Olson is disabled and was on a combination of drugs that affected her awareness, she argues that she was insane within the meaning of ORS 12.160.

Although accrual of a claim is governed by federal law, when a statute of limitations is borrowed from state law, "closely related questions of tolling and application, are [also] governed by state law." *Wilson*, 471 U.S. at 269. The tolling rules taken from state law are broad tolling rules, including a would-be litigant's incapacity, the pendency of other proceedings, and equitable tolling. *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002) (internal citations omitted).

The defendants argue that tolling under ORS 12.160 is only available for the negligence and § 1983 claims because tolling is unavailable for state law discrimination claims. (Defs.' Reply (#14) 6 (citing *Stupek v. Wylie Labs. Corp.*, 963 P.2d 678, 685 (Or. 1998)).) The *Stupek* court held that tolling due to insanity was unavailable under the state discrimination laws at issue in that case because ORS 12.160 was, at the time, limited to those persons entitled to bring an "action mentioned in" the enumerated statutes. 963 P.2d at 685. The discrimination statutes at issue were not mentioned. *Id.* Today, ORS 12.160 states that it is applicable "if a person is entitled to bring an action that is subject to the statutes of limitation prescribed by" the enumerated statutes. Or. Rev. Stat. § 12.160(3). The statute of limitations used for all the claims at issue here, ORS 12.110, is listed in ORS 12.160(3). Thus, ORS 12.160's tolling provision is applicable to the negligence, § 1983, ADA, and Section 504 claims.

//

PAGE 7 - OPINION & ORDER

Under ORS 12.160, if a person is insane "at the time the cause of action accrues . . . the statute of limitation for commencing the action is tolled for so long as the person is insane." Or. Rev. Stat. § 12.160(3). The term insane is not defined in the statute. This court defined the term for the purposes of Oregon statutes of limitations in *Hoffman v. Keller*, 193 F. Supp. 733, 735 (D. Or. 1961), and Oregon courts have adopted the definition. *See Roberts v. Drew*, 804 P.2d 503, 504 (Or. Ct. App. 1991). "The term 'insane,' as used in statutes extending the time within which to commence an action, 'has been held to mean such a condition of mental derangement as actually to bar the sufferer from comprehending rights which he is otherwise bound to know.'" *Id.* (quoting *Hoffman*, 193 F. Supp. at 735) (internal citations omitted). Thus, even if a person is delusional and has only transitory periods of lucidity, the statute is not tolled if she is not delusional in her understanding that she has been harmed by the defendant. *Gaspar v. Vill. Missions*, 961 P.2d 286, 290-91 (Or. Ct. App. 1998).

It is generally a question of fact whether a plaintiff was insane for the purposes of tolling. *See Roberts*, 804 P.2d at 505. In a motion to dismiss, all facts in the complaint are treated as true and all inferences are drawn in favor of the plaintiff. *Watson*, 436 F.3d at 1157 (citing *ASW*, 424 F.3d at 974). Even under this generous standard of review, Ms. Olson has not demonstrated that she was actually barred from knowing that she was injured by the actions taken by the defendants by her mental illness. *See Gaspar*, 961 P.2d at 290.

The Complaint demonstrates that Ms. Olson knew she was injured by the Agreement when she signed it, or immediately thereafter. Upon being provided with the Agreement by the AAEO, Ms. Olson became very upset and protested signing the document because it did not take into account her disabilities. (Compl. (#1) ¶ 15.) This behavior demonstrates that she

understood that the Agreement injured her. "From October 2005 through September 2008, [Ms. Olson] has sought to administratively address the issue of the Agreement and discriminatory bar to the Anthropology Department." (*Id.* ¶ 20.) Finally, she states that "[p]romptly after executing the contract, [she] notified Defendants of her intention to disaffirm the agreement and has consistently sought to do so since that time, and has not acted inconsistent with this expressed desire." (*Id.* ¶ 46.) Ms. Olson's belief that the Agreement was unfair and injured her is the only reason she would wish to disaffirm it or challenge it administratively. I therefore find that Ms. Olson was not insane within the meaning of ORS 12.160(3) during the relevant time period.

Defendants also point to numerous places in the Complaint where Ms. Olson demonstrates that she was stable, with ordered thoughts and rational thinking. She was declared stable and cleared to return to school by her doctors prior to fall 2005. (*Id.* ¶ 13.) She sought to speak to Dr. Ames and sent a letter to Dr. Vasey to explain her behavior. (*Id.* ¶¶ 14-15.) She understood that not signing the Agreement would have consequences, namely being expelled from PSU. (*Id.* ¶ 44.) And in December 2005, Ms. Olson graduated from PSU with a Bachelor of Science degree. (*Id.* ¶ 19.) This supports the conclusion that she was not insane within the meaning of ORS 12.160(3).

I conclude that the statute of limitations was not tolled pursuant to ORS 12.160(3) because Ms. Olson was not barred from comprehending her injury by her mental illness. The Complaint demonstrates that she immediately recognized her injury and attempted to disaffirm and administratively correct the Agreement.

//

//

## II.  Sovereign Immunity

The Eleventh Amendment bars suits in federal court brought by a citizen against the state, its agencies, or its departments, without the state's consent. *Pennhust State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted). "A State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular federal program." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985), *superceded by statute on other grounds as recognized in Cousins v. Dole*, 674 F. Supp. 360, 362 n.6 (D. Me. 1987). However the waiver is made, it must be an "unequivocal indication that the State intends to consent to federal jurisdiction." *Id.* A state's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity to suit in federal court. *Pennhust State Sch. & Hosp.*, 465 U.S. at 99 n.9 (citing *Fla. Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (per curiam)). A general "sue and be sued" clause is not sufficient to waive sovereign immunity to suits in federal court. *See Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616, 619 (9th Cir. 1992) ("Although the Compact contains a provision empowering the Commission to 'sue and be sued,' the Commission has not explicitly waived its sovereign immunity to suits in federal court.")

### A.  *Claim Four: Rescission*

The defendants contend that Ms. Olson's rescission claim against the Oregon University System and PSU is barred by sovereign immunity. Ms. Olson responds that Oregon waived its immunity under ORS 30.320, which states: "A suit or action may be maintained against any county and against the State of Oregon by and through and in the name of the appropriate state

agency upon a contract made by the county in its corporate character, or made by such agency and within the scope of its authority . . . ." Or. Rev. Stat. § 30.320. As noted above, a state's waiver of sovereign immunity in its own courts does not waive its immunity from suit in federal court. *Pennhust State Sch. & Hosp.*, 465 U.S. at 99 n.9. Oregon has not unequivocally consented to federal jurisdiction under ORS 30.320, therefore this claim must be dismissed with prejudice as to the Oregon University System, PSU, and the individual defendants in their official capacities. *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (stating that "a suit against a state official in his official capacity is no different from a suit against the State itself" (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989))).

Ms. Olson also brought suit against several individual defendants in their individual capacities. The defendants note that these defendants are not protected by sovereign immunity in their individual capacities. I decline to exercise pendant jurisdiction over this claim because all the federal claims have been dismissed. Claim Four is therefore dismissed against these defendants in their individual capacities without prejudice.

Ms. Olson contends that she can avoid the problem of sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908). (Pl.'s Resp. (#10) 6.) In *Ex parte Young*, the Supreme Court held that a federal court has jurisdiction over a suit against a state officer to enjoin official actions that constitute an ongoing violation of federal law. *See Lawrence Livermore Nat. Lab.*, 131 F.3d at 839 (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 294 (1997)). Rescission is an equitable claim based on state contract law, not claim based in federal law, therefore the *Ex parte Young* exception to the Eleventh Amendment immunity is not applicable.

//

PAGE 11 - OPINION & ORDER

   B.   *Claim Five: Negligence*

The defendants argue that sovereign immunity also shields the defendants from Ms. Olson's common-law negligence claim. Ms. Olson counters that the OTCA waives the state's sovereign immunity against tort claims. (Pl.'s Resp. (#10) 7 (citing Or. Rev. Stat. § 30.265).) Ms. Olson once again misunderstands the nature of a waiver of Eleventh Amendment sovereign immunity. The OTCA does not explicitly waive immunity from suit in federal court, thus the negligence claim must be dismissed as to the Oregon University System and PSU.

Further, defendants' contend, the Oregon Tort Claims Act ("OTCA") provides that, "[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only." Or. Rev. Stat. § 30.265(1). Thus, Oregon must be substituted for the individually-named defendants, in both their official and individual capacities. *See Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004). Ms. Olson argues that Oregon may not be substituted for the individual defendants due to the Oregon Supreme Court's recent ruling in *Clarke v. Or. Health Scis. Univ.*, 175 P.3d 418 (Or. 2007). In *Clarke*, the court held that removing individual defendants pursuant to the OTCA violated the Remedy Clause of Article I, section 10 of the Oregon Constitution, "because the substituted remedy against the public body . . . is an emasculated version of the remedy that was available at common law." *Id.* at 434. The court reaffirmed that the state "legislature is authorized under Article I, section 10, to vary or modify the nature, the form, or the amount of recovery for a common-law remedy," although that authority is limited. *Id.* The OTCA limits the amount of damages recoverable against a public body to $100,000 in economic and $100,000 in non-economic damages for a claim arising out of

PAGE 12 - OPINION & ORDER

a single occurrence. Or. Rev. Stat. § 30.270(1)(b). In *Clarke*, the amount available under the OTCA was so far below the $17 million in damages, that it violated the Remedy Clause. 175 P.3d at 422, 433-34.

The defendants argue that Ms. Olson's remedy is not emasculated by the OTCA since she is only asking for $500,000 in damages for the negligence claim.[3] No Oregon court has attempted to define what amount constitutes an emasculation of a remedy since *Clarke*. Thus, I have no guidance regarding whether a loss of $300,000 constitutes a violation of the Remedy Clause of the Oregon Constitution. However, it is not necessary for me to determine whether *Clarke* bars the application of the OTCA in this case because it does not alter the outcome. If the individual defendants are replaced by Oregon, the claim will be dismissed due to sovereign immunity. If the individual defendants remain, the claim will be dismissed due to the statute of limitations.

## CONCLUSION

Based on the foregoing, I GRANT the defendants' Motion to Dismiss (#6). The dismissal is with prejudice with regard to all claims and parties with the exception of Claim Four against the individual defendants in their individual capacities, which is dismissed without prejudice IT IS SO ORDERED.

DATED this  5th  day of May, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

---

[3] The Complaint does not specify whether these are economic or non-economic damages. I presume they encompass both, as Ms. Olson alleges that the negligence caused her "extreme mental anguish," which resulted in several hospitalizations. (Compl. (#1) ¶ 49.)

PAGE 13 - OPINION & ORDER